IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

FRED MONTESI'S, INC. d/b/a           )
MONTESI'S SUPERMARKET,               )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )         No. 04-2957 Ma/A
                                     )
CENTIMARK CORPORATION,               )
                                     )
      Defendant.                     )

---

ORDER DENYING DEFENDANT'S MOTION TO TRANSFER

---

On April 13, 1999, Plaintiff Fred Montesi's, Inc. doing business as Montesi's Supermarket ("Montesi") and Defendant Centimark Corporation ("Centimark") entered into a contract under which Centimark agreed to provide a new roof on Montesi's property in Shelby County, Tennessee. (Compl. at ¶ 5.) This suit arises from Centimark's alleged breach of that contract. Before the court is Centimark's motion to transfer/change venue filed on July 13, 2005. Montesi filed a response on July 26, 2005. Centimark filed a reply on August 9, 2005.

I.   **Jurisdiction and Venue**

Montesi is a Tennessee corporation with its principal office in Memphis, Tennessee. (Compl. at ¶ 1.) Centimark is a Pennsylvania corporation with its principal office in Canonburg, Pennsylvania. (Id. at ¶ 2.) Montesi seeks $175,000. (Id.) This court, therefore,

has diversity jurisdiction under 28 U.S.C. § 1332(a). Venue in diversity cases is governed by 28 U.S.C. § 1391 and exists in "any forum with a substantial connection to plaintiff's claim." <u>First of Mich. Corp. v. Bramlet</u>, 141 F.3d 260, 263 (6th Cir. 1998); <u>see also</u> 28 U.S.C. § 1391(a)(2). Because the contract was to be performed in Shelby County, Tennessee, venue is proper under 28 U.S.C. § 1391.

## II.  Background

On or about April 13, 1999, Montesi entered into a contract (the "Sales Agreement") with Centimark in which Centimark agreed to design, furnish and install a new roofing system on a pre-existing structure owned by Montesi and located at 3362 Summer Avenue, Memphis, Shelby County, Tennessee. (Compl. ¶ 5.)  Pursuant to the Sales Agreement, Centimark provided Montesi with a 10-year warranty for the roofing system (the "Warranty"). (Compl. ¶ 9.)  After Centimark had completed the installation and construction of the roofing system, the roof leaked. (Compl. ¶ 10.)  Centimark made several attempts to repair the roof, but the roof continued to leak. (Compl. ¶ 11-16.)

On or about December 10, 2002, Centimark advised Montesi that the center portion of the roof was no longer covered by its Warranty.  (Compl. ¶ 17.)  Centimark claimed that the mechanical units located on the roof of Montesi's structure were not operating properly and were causing severe vibrations which were damaging the

roofing system.  On November 23, 2004, Montesi filed this action alleging breach of contract and breach of warranty.

Both the Sales Agreement and the Warranty contain forum-selection clauses which purport to vest jurisdiction and venue in the state or federal courts in Washington County, Pennsylvania. (Compl., Ex. A at ¶ 3.) Centimark argues that the forum-selection clauses compel transfer of Montesi's suit. (Def.'s Mot. to Transfer at pg. 1.)

The forum-selection clause in the Sales Agreement provides:

Any disputes or actions relating to or arising out of the work to be performed pursuant to this Sales Agreement shall be exclusively governed by the laws of the Commonwealth of Pennsylvania.  Jurisdiction and venue of any action or proceeding arising out of or relating to this Sales Agreement shall be vested in the state or federal courts in Washington County, Pennsylvania. Purchaser irrevocably waives any objections it now has or may hereafter have to the convenience or propriety of this venue.

(Exhibit "A" to Plaintiff's Complaint, reverse side, ¶ 3.)

The forum-selection clause of the Warranty provides:

This warranty issued at the corporate offices of Centimark Corporation in Canonsburg, Pennsylvania, and accordingly is governed by Pennsylvania law.  Jurisdiction and venue of any dispute arising under/or pursuant to the terms of this warrant shall be vested in courts sitting in Washington County, Pennsylvania.

(Exhibit "B", Section VI(b).

## III. Analysis

### A.   28 U.S.C. § 1404(a)

Centimark requests a change of venue under 28 U.S.C.§ 1404(a).

Section 1404(a) provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531,534 (6th Cir. 2002).

This court in its June 27, 2005 Order declined sua sponte to construe Centimark's motion to dismiss as a motion to transfer under 1404(a), but noted that if Centimark chose to a file a motion to transfer within 30 days of the date of the Order, "to the extent that the court has the discretion to do so, the court will consider the new motion to have been filed on January 11, 2005, when Centimark's motion to dismiss was filed."  (Order at page 3, footnote 2.)

Although Centimark filed a motion to transfer within 30 days of the Court's June 27, 2005 Order, Montesi argues that Centimark had waived its right.  Montesi argues that Rule 12(g) and (h) of the Federal Rules of Civil Procedure ("F.R.C.P.") provides that, if a party makes a motion permitted under Rule 12 but does not consolidate with it all motions then available under Rule 12, that party waives its right to raise any unconsolidated issue in subsequent Rule 12 motions. (Resp. to Mtn. to Transfer at pg. 3.)

A Rule 12(b)(3) motion to dismiss is the procedural vehicle by which a party may challenge improper venue. The Rules of Civil Procedure do not contain any venue provisions or requirements.

4

Those requirements are statutory, as are the remedies. Section 1406(a) provides for transfer from forums in which venue is improper. By contrast, Section 1404(a) begins with the premise that the plaintiff has properly exercised its venue privilege. (Van Duren v. Barrack, 376 U.S. 612,634, 84 S.C. 805, 11 L.Ed.2d 945 (1964)).

The Rule 12 framework is properly applied to motions where dismissal is warranted. The Court in its June 27th Order held that venue was not improper and denied Centimark's motion to dismiss. Therefore, Centimark's motion to transfer must be analyzed under Section 1404(a), not under Rule 12. Because Section 1404(a) authorizes this Court to transfer venue in the interest of justice, Montesi's analysis under Rule 12 is inapplicable. A district court has broad discretion to decide whether to transfer a case. Phelps v. McClennan, 30 F.3d 658, 663 (6th Cir. 1994) (citing Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986)). Therefore, the Court will consider Centimark's motion to transfer.

**B.   Kerobo Factors**

To determine whether transfer is appropriate under Section 1404(a), the Court must weigh a number of case-specific factors. Kerobo, 285 F.3d 537-38. They include:

> the convenience of parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading the interest of justice. A forum-selection clause in a contract is one of the factors to consider in this calculus. Such a clause should receive neither dispositive consideration nor no

5

consideration but rather the consideration for which Congress provided in § 1404(a).

Kerobo, 285 F.3d at 537-38 (internal quotes and citations omitted).

Although the Court noted in its June 27th Order denying Centimark's motion to dismiss that the parties had not addressed in detail other factors that might be relevant to the motion to transfer, Centimark's motion focuses exclusively on the "forum selection clause" factor. Because Centimark is the moving party, the Court will discuss the forum-selection clause before discussing the other factors.

### 1.   Forum-Selection Clause

Forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. See Moses v. Business Card Express, Inc., 929 F.2d 1131, 1136 (6th Cir. 1999); see also The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.C. 1907, 32 L.Ed.2d 513 (1972).

Montesi makes two arguments about the enforceability of the forum-selection clause. First, Montesi argues that the language of the clause is permissive, rather than mandatory. (Resp. to Mtn. to Dismiss at pg. 6.) Second, Montesi argues that, after all relevant factors have been considered, the current venue is more convenient and appropriate. Montesi's

latter argument will be addressed after the court analyzes all of the Kerobo factors. (Resp. to Mtn. to Transfer at pgs. 4-6.)

Centimark argues that the contract containing the forum-selection clause was freely negotiated and mutually agreed upon and that the forum clause is valid and should be enforced (Memorandum in Supp. of Mtn. to Transfer at pg. 3). Centimark also argues that the language of the forum-selection clause is clearly mandatory. (Reply to Plaintiff's Resp. to Mtn. to Dismiss at pgs. 6-7.)

Whether a forum-selection clause is mandatory or permissive has been often litigated. Mandatory forum-selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum. Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320 (10th Cir. 1997). Permissive forum-selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere. Id.

Some circuits have concluded that, if a forum-selection clause specifies venue with mandatory or obligatory language, the clause will be enforced; when only jurisdiction is specified, the clause generally will not be enforced. See Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992); John Boutari & Son, Wines & Spirits,

S.A. v. Attiki Imp. & Distrib. Inc., 22 F.3d 51, 52 (2d Cir. 1994); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989).

For example, the Ninth Circuit has held that "the courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract" is a permissive forum-selection clause. Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 76 (9th Cir. 1987). The Ninth Circuit concludes that the forum-selection clause authorizes, but does not mandate, jurisdiction in Orange County. Id. The Fifth Circuit has held that "this agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York" is ambiguous and, when construed against the drafter, is permissive. Keaty v. Freeport Indonesia, Inc., 504 F.2d 955, 957 (5th Cir. 1974).

In contrast, the Seventh Circuit has held that the "[p]lace of jurisdiction...is the registered office of the trustee [in Germany] to the extent permissible under the law" is a mandatory forum-selection clause. Frietsch v. Refco, Inc., 56 F.3d 825, 827 (7th Cir. 1995). In its analysis, the Seventh Circuit concludes that the phrase "to the extent permissible under the law" would have no function if the forum

clause were not mandatory. Id. 829.   Similarly, the Ninth Circuit has held that the "[l]icensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia.   Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia" is a mandatory forum-selection clause because the clauses specifically states that venue of "any" action "shall be deemed" to be in Gloucester County.   *Docksider*, 875 F.2d 763.

In General Electric Co. v. G. Simpelkamp GmnH & Co., 29 F.3d 1095 (6th Cir. 1994), the Sixth Circuit has held that the following is a mandatory forum-selection clause:

> Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier.  This shall also apply for claims in summary procedures on bills of exchange, promissory notes or cheques.  The supplier is also entitled to file a suit at the principal place of business of the purchaser.

Id. at 1097.  The Sixth Circuit concludes that, "[b]ecause the clause states that 'all' disputes 'shall' be at [defendant's] principal place of business, it selects German court jurisdiction exclusively and is mandatory."  The Sixth Circuit bases its conclusion on Bremen, in which the Supreme Court held that a forum-selection clause stating that "any" dispute arising from a contract "must" be brought before a London court is binding on the parties, unless the clause is shown to be unreasonable. 407 U.S. 1, 2, 15, 92 S. Ct. 1907, 1909,

9

1916, 32 L. Ed. 2d 513 (1972). <u>Bremen</u> does not address the mandatory/permissive analysis, however, because neither party raised the issue.

The Tenth Circuit, in <u>K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")</u>, 314 F.3d 494 (10th Cir. 2002) analyzes other appellate opinions addressing mandatory and permissive forum-selection clauses.   When reviewing the Sixth Circuit's opinion in <u>Siempelkamp</u>, the Tenth Circuit suggests that the Sixth Circuit may have given weight to the last sentence of the  clause, which affords the supplier the right "to file a suit at the principal place of business of the purchaser."  The Tenth Circuit suggests that the last sentence supports the conclusion that the first sentence of the clause, placing jurisdiction of all disputes at the principal place of business of the supplier, was intended to confer exclusive jurisdiction.  <u>Id</u>. at 500.   The Tenth Circuit concludes that "the clause, read as a whole, appears to require any disputes filed by the purchaser to be resolved exclusively at the principal place of business of the supplier." <u>Id</u>.

Montesi argues that the clause is permissive because it does not contain words like "exclusively," "solely," or "only" immediately before or after the word "vested".  (Resp. to Mtn to Dismiss at pg. 6.) Centimark relies on <u>Union Planters Bank,</u>

10

<u>N.A. v. EMC Mortgage Corporation</u>, 67 F. Supp. 2d 915 (W.D. Tenn 1999) and argues that "shall be vested in the state or federal courts in Washington County, Pennsylvania" is unambiguous in its wording and clearly mandatory in nature (Reply to Plaintiff's Resp. to Mtn to Dismiss at pg. 7).

In <u>Union Planters</u>, the Court held that "the parties hereby agree that all disputes arising hereunder shall be submitted to and hereby subject themselves to the jurisdiction of the courts of competent jurisdiction, state and federal, in the state of Texas" is a mandatory forum-selection clause. <u>Id</u>. at 922. The court notes that "the words 'shall be submitted to'....leave no room for any permissive application." <u>Id</u>.  In <u>Union Planters</u> the court also notes that Union Planters spent little effort arguing that the clause was ambiguous.  <u>Id</u>.

Here, Montesi suggests that Centimark might file an action in its home state for nonpayment for goods and services or a declaratory judgment action in Pennsylvania.  Thus, Montesi contends that the forum-selection clause merely permits venue in Washington County and does not mandate it. (Resp. to Mtn to Dismiss at 7-8.)

Although Montesi's argument is a reasonable interpretation of the forum-selection clause in the Warranty, the clause in the Sales Agreement contains additional language making the clause mandatory.  The last sentence of the clause

in the Sales Agreement states that "the Purchaser irrevocably waives any objection it now has or may hereafter have to the convenience or propriety of this venue."   Based on the reasoning in Siempelkamp and K & V Scientific Co., the clause, read as a whole, requires that any disputes filed by the purchaser be resolved exclusively in Washington county.   If the clause were intended to be permissive, there would be no need of irrevocable waiver.

The forum-selection clause at issue in this matter is mandatory.  This factor weighs in favor of transfer.

### 2.   Convenience of the parties and witnesses

Montesi argues that virtually all of the witnesses in this action are located in or near Shelby County, Tennessee. (Resp. to Mtn To Transfer at pg. 5).   The Rule 26(a)(1) F.R.C.P. Initial Disclosures indicate that approximately 80 of 88 potential witnesses are from the Shelby County area of Tennessee.   Centimark does not address the convenience of parties and witnesses or the other Kerobo factors.

The Court notes that the United States District Court for the Western District of Pennsylvania would be inconvenient for a substantial majority of the witnesses.   Therefore, this factor weighs against transfer.

### 3.   Public-interest factors of systemic integrity

Public-interest factors include the issues of congested

dockets, concerns about resolving controversies locally, and in a diversity case, having the trial in the forum that is at home with the state law that must govern the case.  See Gulf Oil Corp, v. Gillbert, 330 U.S. 501, 508-509, 67 S. Ct, 839, 91 L.Ed. 1055(1947).

The parties dispute the effect of Tennessee public policy and Tennessee law on this case. A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496. Therefore, this court must apply the Tennessee rule to determine which jurisdiction's law to apply.

In contract disputes, Tennessee follows the traditional rule of lex loci contractus, which provides that the construction of a contract is governed by the law of the state where the contract was made. Jasper v. Streck, 1998 WL 429648, at *3 (Tenn. Ct. App. 1998) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)). In this case, the contract contains a choice of law clause. Tennessee will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction, absent a violation of the Tennessee's public policy. Bright v.

13

Spaghetti Warehouse, Inc., 1998 WL 205757, at *5 (Tenn. Ct. App. Apr. 29, 1998); Arcata Graphics Co. v. Heidelberg Harris, Inc., 874 S.W.2d 15, 27 (Tenn. Ct. App. 1993).

Tennessee Code Annotated § 66-11-208(a) provides in pertinent part:

> [A] provision in any contract, subcontract or purchase order for the improvement of real property in this state is void and against public policy if it makes the contract, subcontract or purchase order subject to the substantive laws of another state or mandates that the exclusive forum for any litigation, arbitration or other dispute resolution process is located in another state.

Montesi argues that the court should recognize the public policy set forth in Tennessee Code Annotated § 66-11-208, which prohibits the substantive laws of Pennsylvania from being applied to the real property at issue and forecloses the application of Pennsylvania law and venue in Pennsylvania. (Resp. to Mtn. to Transfer at pg. 5.) Centimark argues that the predominant factor in the Sales Agreement is not the real property, but the goods to be used in the roofing work. Therefore, the provisions of the Uniform Commercial Code ("U.C.C.") would govern. (Reply to Resp. to Mtn. to Dismiss at pg. 10). Centimark relies on Grundy County v. Harrison, 1989 WL 54906 (Tenn.Ct.App. 1989), in which the court concludes that the predominant factor in a roofing contract is the material to be used in performing the work. The Grundy court notes that the Tennessee Supreme Court has adopted the "predominant factor test" to determine whether a contract including both goods and services is governed by the U.C.C.

Id. at 3.

In Hudson v. Town & Country True Value Hardware, Inc., 666 S.W.2d 51, 53 (Tenn. 1984), the Tennessee Supreme Court opines: "We think it preferable to adopt the test that views the transaction as a whole. If the predominant assets to be transferred are goods, the U.C.C. governs, but if the predominant assets are non-goods, then U.C.C. has no application." The Hudson case considers the bulk sale of an established business including both real estate and stock. The court in Hudson concludes that the predominant assets to be transferred are non-goods and that the U.C.C. does not apply.

In the case at bar, Centimark contracted to install a "Centimark Mechanically Attached EPDM Roof System" and provide a warranty. Centimark agreed to provide the material and labor. (Exhibit "A" to Plaintiff's Complaint, April 13 1999 letter.) The contract does not distinguish the costs of material, labor, or warranty. The contract price includes labor and  warranty, neither of which would constitute goods within the meaning of the U.C.C..

Thus, under the predominant factor test, the U.C.C. is not applicable because the predominant factor is not the sale of goods. The contract would not exist absent labor. TCA § 47-2-105(1) defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than money in

15

which the price is to be paid, investment securities (Chapter 8 of this title) and things in action."

Neither labor nor warranty falls within the definition of goods under the U.C.C. The court concludes that TCA § 66-11-208 is applicable. TCA § 66-11-101 defines a contract as an "agreement for improving real property, written or unwritten, express or implied, and includes labor performed or materials furnished for improving real property." The contract in this case is an agreement for improving real property contemplated by TCA § 66-11-208.

Therefore, Centimark's reliance on <u>Grundy</u> is misplaced. Grundy considered bids for roofing work. Although the <u>Grundy</u> court does not explain its reason for concluding that the contract was for materials, based on the facts in the opinion, the distinguishing factor between the bids appears to have been the cost of materials. Here, Montesi contracted for labor, Warranty, and materials. No fact before the court suggests that the materials used in the roofing work were the predominant factor.

Under TCA § 66-11-208, the application of Pennsylvania law and venue in Pennsylvania are against the public policy of the state of Tennessee. This factor weighs against transfer.

**4.   Private-interest factors**

Private-interests include the relative ease of access to the source of proof, availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining

16

attendance of willing witnesses, the possibility of viewing the premises, and all other practical problems that make trial of a case easy, expeditious and inexpensive. See Gulf Oil, 330 U.S. at 508.

This factor weighs in favor of retaining the case. The roofing system in dispute is located in Shelby County, Tennessee. The cost of obtaining the attendance of witnesses is lower in this court because the vast majority of witnesses are located in and around Shelby County, Tennessee.

**C.   Plaintiff's Request for Attorney Fees**

Montesi seeks attorney fees and costs for responding to baseless motions. (Resp. to Mtn. to Transfer at pg. 6). Rule 11 of the F.R.C.P. provides states that "a motion for sanctions under this rule shall be made separately from other motions or requests." Plaintiff's request was not filed separately. Defendant's motion is not "baseless." Plaintiff's request for attorney fees is DENIED.

**IV. Conclusion**

After considering the relevant factors, the Court concludes that transferring this action would be contrary to the interests of justice. The majority of factors weigh in favor of retaining the case. For the foregoing reasons, Defendant's motion to transfer this matter to the Western District of Pennsylvania is DENIED.

So ordered this 2nd day of May 2006.

_____
s/SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE